O’Neall, J.,
delivered the opinion -of the Court.
Upon the first ground of appeal, the whole court differ in opinion with the Judge below. Starkie, in his Treatise on Slander and Libel, at page 161, thus sums up the doctrine— “an action lies for any false, malicious and personal imputation effected by writings, pictures or signs, and tending to alter the party’s situation in society for the worse.” Bell vs. Stone, 1 B. & P. 331. This is the settled English doctrine, and although it has been assailed by Mr. Starkie and others, as being a distinction between written and verbal slander without any real difference, yet I confess I cannot take that view of it. Words are evanescent; they are as fleeting as the perishing flowers of spring ; they are often the results of mere passion; but written, slander is to remain; it is to be treasured up by every other malicious man for his day of vengeance; it is the effect of deliberate design, and, therefore, is the evidence of malice, without which, actual or implied, *311 no action, of slander could be maintained. But the distinction prevails in this State as well as in England. In the case of Mayrant vs. Richardson, 1 N. & McC. 348, the second count in the declaration was on a letter imputing to the plaintiff an “ affected mind.” It was not denied that the words written would be actionable, which, if spoken would not be. Judge Nott, in delivering the opinion, said — “ It has been held that words written and published are actionable, which if spoken would furnish no ground. But then they must be such, as in the common estimation of mankind, are calculated to reflect shame and disgrace upon the person they are spoken of, and bold him up as an object of hatred, ridicule, or contempt.” The case of Leckie ads. Couty, was decided by the Court of Appeals upon the same distinction — 3 vol. MS. Decisions, 494. These cases conclude the matter. It is not denied that the letter of the defendant to the plaintiff, is calculated to reflect shame and disgrace upon the plaintiff’ and to bold him up as an object of hatred, ridicule and contempt. There can therefore be no doubt that it is a slander for which an action lies without stating or proving special damage.
Upon the second ground, a majority of the Court agree with the Judge below, that there was no publication. There is a great distinction in this respect between an indictment, and an action of slander, for a libel. In the first, the end is to prevent a breach of the peace; and hence a publication to the party of whom is written, will be enough. In slander, the object is to redress the party for an injury done to his character, which is nothing more than the good opinion of his neighbors and acquaintances. If the knowledge of the slander be altogether confined to himself, he has sustained no damage. If the defendant only communicated the slander to the plaintiff, then he has committed no wrong for which he is liable civilly. If the plaintiff afterwards make public the charge, the defendant is not answerable for the consequences— for the act of publication is not his.
These principles seem to me so plain, as only to require to be stated to receive the assent of every one. It is, however, contended that in three ways the defendant has published the slander — 1st, by throwing the letter sealed into the enclosure of the witness; 2d, by addressing it to the plaintiff or Susan Sloan; and 3d, by admitting its contents when interrogated *312 concerning the same by the plaintiff, in a public company at Darlington Court House.
Upon the first, it may be remarked, that since Lake vs. King, (a. d. 1670,) 1 Mod. R. 58, it has been held, that if a man write a scandalous letter and deliver it to the party himself, it is no slander. Sending a letter to a party under seal, is the same as delivering to the party himself. For in such a case the party shows his intention that it should correct him alone, and be unknown to others. The case of exception to this rule is, where a letter was addressed to a man whose clerk was in the habit of opening and reading his letters, and this fact was known to the defendant, and the clerk- did open and read the letter; there it was held to be the publication of the defendant, for a third person had come to the knowledge of the charge, by the act of the defendant. Here the fact of throwing the letter, sealed, into an open enclosure, might have led the impertinent curiosity of a finder to pry into its contents; and if this had happened, I should have held the defendant answerable for the publication, which would have then resulted from..'his act: But the letter reached its address unopened., and so far .there was no publication in fact.
2d. The address of the letter to the plaintiff or Susan Sloan, does not of necessity, I think, make the defendant answerable for a publication of the slander of, and concerning the plaintiff. The address would have authorized-either to open and read the letter; and if the proof had been, that Susan Sloan had read the letter, or hearing of it, had required the plaintiff to read it to her, and he had so done, I should have thought the fact of publication proved. / But the letter reached him — he opened and read it of his own head to the witness and his family. Whether Susan Sloan was or was not present, does „not appear. His act on his part cannot be visited on the ^defendant. He himself published 'the defendant’s slander, pand must bear the consequences of his folly.
8d. The defendant’s answers to the questions put by the plaintiff, as to the contents of the libel, cannot, I think, be regarded as his (the defendant’s) publication. The plaintiff stated the contents, and the defendant merely assented that they were contained in the letter, the authorship of which, he had avowed. This was no fresh publication. If there had been a *313 previous one, it would bave been evidence enough to charge him with it. The facts as to which he was questioned, was merely to fix the identity of the letter, the authorship of which he had admitted. Writing it, if a publication in fact, without the agency of the plaintiff had taken place, would have made the defendant answerable.
The motion to set aside the nonsuit is dismissed.
Evans, J., and Butler, J., concurred; the latter, however, not without entertaining some doubts as to the correctness of the opinion.
Richardson, J.
The nonsuit was probably ordered upon the ground that, as the plaintiff proved no special damage, the action could not be supported. But’ such., dbctrine is deemed erroneous, by the Court: ko that the nonpuit must be set aside, unless the evidence of j¡he'publication of the libel, was too weak to carry the case to:the jury.
Upon this point, the Court is divided. The facts are plain. The defendant wrote the libel — sealed it — directed it, in the form of a letter to the plaintiff, or Miss Susan Sloan — requested a witness to carry it to the plaintiff, or drop it near his residence. The witness refused; and the letter was after-wards picked up by a stranger, and delivered to the plaintiff, who opened and read it aloud. The defendant afterwards avowed that he wrote it.
Is this such evidence of a publication by the defendant, as to save the plaintiff from a nonsuit ? is the question.
In the case of Rex vs. Besse, 1 Lord Raymond, 417, it is laid down that the libel being written by the defendant, is prima, facie proof of publication, and throws on him the bur-then of disproving such presumption; 2 Saunders, 809. So also, in Baldwin vs. Ephinstone, 2 W. Blac. 1038, printing is prima facie proof of publication. In Rex vs. Burdette, 4 B. & A. 135, the mere parting with the libel — whereby the defend- and gave up his control over it, with the intent to print, was held to be prima facie proof of publication.
It was decided in the case of Phillips vs. Jansen, 2 Esp. R. 624, that a written libel may be published in a letter to a third person. And although the publication of a libellous *314 letter to the plaintiff alone, will not support a civil action, yet it will an indictment. But this was a mere nisi prius decision of Lord Kenyon. And Williams, in Ms note to the case of Lake vs. King, says, if a letter containing a libel is sent to another, or the party himself, it is a publication; and quotes 2 Blac. Rep. 1039; 1 Term, 110 — and the jury must decide whether the publication be sufficient, of not.
But in case of a letter to the party himself, where the defendant knew that the plaintiff’s clerk usually opened his letters, it was held in Delacroix vs. Thevanot, 2 Starkie, 63, to amount to publication, and to support a civil action.
Now, how much stronger would that case have been, if the libellous letter had been directed to the plaintiff, or his clerk, which is the fact in the case before us, i. e. to “John A. Fon-ville,” or “Miss Susan Sloan.” On the other hand, if the letter had been directed to Miss Sloan only, it would not have been better directed to a third person, than when to the plaintiff, or “ Miss Sloanor if a duplicate had been directed to her separately, it would have been the same, and no more, than the letter to the plaintiff, “ or Miss Sloan.”
In either, it is precisely the case of Phillips vs. Jansen, that is, a libel published in a letter to a third person.' I do not take the meaning to be, that the mere sealing up the libel and sending it to a third person, is publication ipso facto. But that if the libel should in consequence become known to the third person, or should, in any way, become notorious, then the writer becomes responsible for the publication, which his conduct in sealing and sending the letter, gave rise to. This is the principle in Burdett’s case, and all that class, with the single exception of the letter to the plaintiff alone. It is in such sense that Lord Holt says, that when a libel is produced in the handwriting of a man, he is taken in the manor: Lord Ray. 417; 4 Esp. 248; that is to say, the writer is prima facie liable, if the libel has been practically published, no matter how; unless he disprove the publication .being his act. He stands like the man'who threw a lighted cracker into a crowd, which being thrown from hand to hand, at length put out the eye of a bystander. The first aggressor was held liable for the whole injury. Many are the analogous instances, of attaching the consequences to him who begins mischief. It is a principle; and such a rule applies with *315 much, force, to a libeller wbo commences in malice, not in sport merely. There is a fact which should make this rule strong against the defendant. After the libel had been published, he deliberately avowed it to be his act in all its details — gave it the sanction of his .name, and did not disavow the publication. May it not then be inferred, that he had propagated, as well as originated, the defamation ? In such cases, malice is the important ingredient; and if publication has practically followed, we are not to infer the negative, nor to be astute in order to shield the slanderer; but leave the jury to refer the publication to the malicious author, from slight circumstances, and the character of the case. If men may differ upon the evidence, or the judicial mind vacillates, it is enough, the case must go to the jury. And, I repeat, that it is improbable, that this was the ground upon which the nonsuit was ordered on the circuit.
Gantt, J,, concurred.